**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CONSTRUCTION AND GENERAL LABORERS UNION NO. 1140, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Respondent.**

No. 88–1524.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1988.

Decided Nov. 23, 1988.

Howard E. Perlstein, Marilyn O'Rourke Athens, Aileen A. Armstrong N.L.R.B., Washington, D.C., for petitioner.

David Weinberg, Omaha, Neb., for respondent.

Before HEANEY and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

PER CURIAM.

This case is before this Court on the application of the National Labor Relations Board for enforcement of an order against Construction and General Laborers Union No. 1140, AFL–CIO. The Board found that the Union violated section 8(b)(1)(A) and (2) of the National Labor Relations Act by causing Cadet Construction Company to discharge laborer Jay Underwood. This finding was based on the Board's subsidiary finding that Cadet had no obligation to seek laborers through the Union's hiring hall because Cadet was not the alter ego of Dan Paulson Construction, and therefore

was not bound by Dan Paulson Construction's agreement with the Union to hire all laborers through its hiring hall. Upon review, we enforce the order of the Board.

In 1981, Dan Paulson formed Dan Paulson Construction Company with himself and his wife as the sole stockholders, officers and directors. In April 1981, the company received a contract to pour driveways on a housing project. The general contractor of the housing project had a contract with the respondent-Union. Dan Paulson Construction signed a collective bargaining agreement with the Union agreeing to pay union scale, to contribute to union funds, and to obtain all the company's employees including laborers through the Union's hiring hall. The contract entitled the Union to utilize economic recourse, including the right to picket to enforce the contract. The contract was effective through May 31, 1983 and thereafter from year-to-year unless either party gave ninety days notice of intent to modify the agreement.

Because of financial problems in 1983, Paulson had to sell his house, close Dan Paulson Construction, and seek employment as an hourly worker.

In 1985, Paulson decided to go back into business as a cement contractor. Instead of reviving Dan Paulson Construction, that corporation having never been formally dissolved, Paulson started a sole proprietorship called Cadet Construction Company. Paulson was the owner, and he worked and supervised operations. Cadet performed work in the Omaha/Council Bluffs area as had Dan Paulson Construction. Cadet did not, however, use any of the equipment that Dan Paulson Construction had used. Cadet failed to obtain any employees through the Union's hiring hall.

On November 13, 1986, Cadet began concrete work on the Hy–Vee grocery store project. Cadet employed Otis and Steve Turner as concrete finishers, and Jay Underwood as a laborer on the project. They were not hired through the Union's hiring hall. The following day, the Union's business agent, Larry Lewis, observed Underwood doing laborer's work. Lewis, taking the position that Cadet was the alter ego of Dan Paul Construction, confronted Paulson about his failure to hire a laborer through the Union's hiring hall process, as required by the contract with Dan Paulson Construction. Lewis stated, according to the testimony of Dan Paulson and Jay Underwood, that if Underwood did not leave the site the Union would picket the project and shut the project down. Paulson discharged Underwood, and the next day the Union sent three laborers to the project.

■ The Board found that the following facts supported a finding that Cadet was not the alter ego of Dan Paulson Construction: that there was a two-year hiatus between the closing of the first company and the formation of the second, that there was a lack of dealings between the Union and Dan Paulson Construction for the eighteen months before closing, that the closing of Dan Paulson Construction was motivated by personal economic reasons rather than a desire to avoid the Union agreement, that Cadet did not use Dan Paulson Construction's equipment, and that the two companies served different customers.

We find substantial evidence in the record to support this finding. We deem it of particular importance that the business was initially closed because of economic difficulties and that there was a hiatus of two years between the two companies.

■ The Board also found that the Union's interference with Cadet Construction causing Cadet to fire Jay Underwood, absent legitimate reasons like an exclusive hiring hall agreement, was a violation of section 8(b)(1)(A) and (2) of the Act. The record shows that both Dan Paulson and Jay Underwood testified that the Union business representative, Larry Lewis went to the job site and told Paulson that Cadet had to fire Underwood, threatening to strike the site. In response, the Union claims that Paulson's subsequent discussion with the general contractor of the job was the cause of Underwood's dismissal, but yet the Union failed to bring either the general contractor or the contractor's superintendent to testify as to the content of the conversation in question.

We find substantial evidence in the record also to support this finding. After a careful review of the record, we enforce the Board's order.